FILED
CLERK
8/19/2016 3:08 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SHASHIBALA SEHGAL,

                          Petitioner,

      -against-

UNITED STATES OF AMERICA,

                          Respondent.
----------------------------------------------------------------X

**OPINION AND ORDER**
13-cv-4352 (SJF)

FEUERSTEIN, District Judge:

Petitioner Shashibala Sehgal ("Sehgal") moves this Court pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence of imprisonment. (*See* § 2255 motion (Dkt. 1)). The United States of America (the "Government") objects. (*See* opposition letter dated October 31, 2013 ("Opposition" or "Opp.") (Dkt. 9)). For the following reasons, Sehgal's motion is denied.

**I.    BACKGROUND**

    **A.    Trial, Sentence, and Appeal**

On September 20, 2005, Sehgal, Sunil Jaitly ("Sunil"), and Rupal Jaitly ("Rupal") were indicted by a grand jury in the Eastern District of New York on a single count of conspiring to defraud the United States in violation of 18 U.S.C. § 371. (*See* Indictment, E.D.N.Y. Case No. 05-cr-688 ("Cr. Dkt.") 1). The indictment detailed a scheme spanning approximately ten (10) years in which Sehgal, a licensed physician, and Sunil and Rupal, both non-doctors, created various shell companies to which they transferred revenue generated through Sehgal's medical practice for the purpose of avoiding federal income taxes. (*Id.*). Sehgal and Rupal appeared at an October 26, 2005 arraignment hearing and entered pleas of not guilty, but Sunil was absent from that hearing and every subsequent hearing, apparently having fled to India. (Cr. Dkt. 16). Rupal ultimately pled guilty and agreed to cooperate with the Government, and on July 17, 2008,

1

a grand jury issued a superseding indictment in which Sehgal, Sunil, and Arti (a.k.a. "Angela") Jaitly (Sunil's and Rupal's daughter) were named as defendants, but Rupal was not. (*See* Superseding Indictment (Cr. Dkt. 58)).

Sehgal was initially represented by Michael D. Weil, an attorney with the Federal Defender Division of the Legal Aid Society. On March 2, 2006, Sehgal filed a letter requesting that the Court appoint a new defense attorney "who is not presuming [and] speaking hypotheticaly [sic] but is able to get whatever can be to explain everything to [the] court how [and] what are the facts [and] analyze them thoroughly." On April 3, 2006, Mr. Weil moved to withdraw on the ground that, *inter alia*, his "communications with Ms. Sehgal [had] deteriorated to the point where [they were] having a difficult time working together in preparing her defense." (Cr. Dkt. 25). On April 7, 2006, Mr. Weil was relieved as Sehgal's counsel and Stuart Grossman, an attorney on the Criminal Justice Act panel, was appointed. (Cr. Dkt. 28). On November 13, 2007, Michael P. Kushner, an attorney who was then affiliated with The Blanch Law Firm, P.C. (the "Blanch Firm"), appeared on behalf of Sehgal, replacing Mr. Grossman. (Cr. Dkt. 48).

During an October 15, 2008 status conference attended by Mr. Kushner, the Court scheduled jury selection and trial to begin on November 3, 2008. (Cr. Dkt. 97). In late October 2008, Sehgal sent a letter to the Court indicating that "I was surprised to learn that … Michael Kushner had left the [Blanch] firm suddenly without telling me anything." (Cr. Dkt. 122). She wrote that the "only other person that I have spoken [with at the Blanch Firm] is Jeffery [Chabrowe] who I am not comfortable with as he is intimidating and I seriously doubt has studied any transcripts or material at length…" (*Id.*). She requested that the Court remove Mr. Chabrowe (who never filed a notice of appearance) from the case and "find Michael Kushner

and ask him to represent me…" (*Id.*). She sent another undated letter to the Court asking that the Court "order the [Blanch] firm to pay Michael [Kushner] for his work and ask Michael to represent me" because, *inter alia*, "I am able to communicate with him…" (Cr. Dkt. 123). On October 31, 2008, the Court directed Sehgal, Mr. Kushner, and at least one other attorney from the Blanch Firm to appear on November 3, 2008 prepared to proceed with jury selection and trial. (10/31/08 Cr. Dkt. ECF Order). On November 3, 2008, the Court directed Mr. Kushner to represent Sehgal through trial and ordered the Blanch Firm to pay Mr. Kushner ten thousand dollars ($10,000) for his services, and adjourned the commencement of jury selection to November 5, 2008. (Cr. Dkt. 115).

Sehgal proceeded to a three (3)-day jury trial with Mr. Kushner as her attorney. On November 7, 2008, the jury found her guilty on the single count of conspiring to defraud the United States in violation of 18 U.S.C. § 371. (Cr. Dkt. 131). As summarized in the unsuccessful motion for acquittal that he filed on Sehgal's behalf on November 13, 2008 (Cr. Dkt. 132), Mr. Kushner's primary argument at trial was that Sehgal was not a knowing participant in a tax evasion conspiracy because she "was unaware of how the proceeds of her practice were being spent, that [she] tried to revoke her co-defendants' authority to write checks out of the proceeds of her practice and that [she] was powerless to prevent her co-defendants from spending the proceeds of her practice because she was under the spell of the defendant Sunil C. Jaitly," who Sehgal purportedly believed to be a mystical figure with godlike powers. On November 18, 2010, the Court sentenced Sehgal to fifty-one (51) months in prison with credit for time served followed by a three (3)-year term of supervised release, and $1,587,882 in restitution. (Cr. Dkt. 219, 220).

Sehgal, represented by John S. Wallenstein, appealed her conviction to the Second Circuit, raising the following arguments: (1) the District Court abused its discretion by denying a continuance of the trial to allow Sehgal to retain new counsel after she learned that the Blanch Firm had fired Mr. Kushner; (2) the District Court's order that Sehgal be detained overnight between the second and third days of trial after she arrived an hour late late the first two (2) days and had been dishonest with the Court violated her Sixth Amendment rights; (3) Mr. Kushner's representation was constitutionally ineffective due to his lack of experience and preparation; (4) the evidence presented at trial was insufficient to establish Sehgal's knowing participation in a conspiracy; and (5) the District Court rushed witnesses to testify in order to finish the trial quickly, depriving Sehgal of a fair trial. *See* Sehgal App. Br. (2d Cir. Case No. 10-5006, Dkt. 67) at 8-41. In an order issued May 3, 2012, the Second Circuit affirmed Sehgal's conviction, rejecting each of her arguments apart from her ineffective assistance claim, which it declined to review, "leaving Sehgal to pursue it through the preferable course of a motion under 28 U.S.C. § 2255." *U.S. v. Sehgal*, 480 Fed. Appx. 16, 19-21 (2d Cir. 2012). Sehgal did not file a petition for a writ of certiorari in the Supreme Court. (Dkt. 1 at 2).

**C.     Sehgal's § 2255 Motion and the Government's Opposition**

On August 1, 2013, Sehgal, now represented by an attorney named Florian Miedel, filed a § 2255 motion (Dkt. 1) along with supporting papers, including an affidavit by Sehgal dated July 29, 2013 (Dkt. 1-2 at 2-20) ("Sehgal Aff.") and a memorandum of law (Dkt. 2) ("Mem."). Sehgal raises only an ineffective assistance claim in her § 2255 motion. (Dkt. 1 at 4). She argues that, due to lack of preparation and/or diligence, "Mr. Kushner failed to unearth the underlying reasons for her actions" – specifically that, due to years of purported mental and physical abuse, "Sehgal had been under the complete control and domination of Sunil Jaitly."

(*Id.*).  The Government filed an opposition letter on October 31, 2013 (Dkt. 9) ("Opp."), along with an affirmation of Michael Kushner dated October 25, 2013 (Dkt. 9-1) ("Kushner Aff."). On December 2, 2013, Sehgal filed a reply brief.  (Dkt. 12) ("Reply").  On May 27, 2016, the Court directed Mr. Kushner to provide copies of any documents referenced in his affirmation for in camera inspection, with copies to Sehgal.  (Dkt. 16).  Mr. Kushner sent those materials to chambers on May 31, 2016, with copies to Mr. Miedel.

## II. LEGAL STANDARDS

### A. § 2255 Generally

Section 2255(a) of Title 28 of the United States Code provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice."  *Graziano v. U.S.*, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotations omitted).  "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."  *Yick Man Mui v. U.S.*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotations omitted).  A prisoner may receive an evidentiary hearing on his § 2255 motion unless "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that [he] is

not entitled to relief…" *Puglisi v. U.S.*, 586 F.3d 209, 213 (2d Cir. 2009).

## B. The Procedural Default and Mandate Rules

It is firmly established that a § 2255 motion is not a substitute for direct appeal. *See, e.g., U.S. v. Frady*, 456 U.S. 152, 165 (1982); *U.S. v. Munoz*, 143 F.3d 632, 637 (2d Cir. 1998). Under the procedural default doctrine, "the general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. U.S.*, 538 U.S. 500, 504 (2003) (internal citations omitted); *see also Bousley v. U.S.*, 523 U.S. 614, 621 (1998) ("In failing to [raise the argument presented in his § 2255 petition on direct appeal], petitioner procedurally defaulted on the claim he now presses on us."). To establish "cause" for failing to raise an argument on direct appeal, a § 2255 movant must point to circumstances " '*external* to the petitioner, something that cannot be fairly attributed to him.' " *Marone v. U.S.*, 10 F.3d 65, 67 (2d Cir. 1993) (per curiam) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)) (emphasis in original). Attorney error, ignorance, or inadvertence does not constitute "cause" unless the attorney's performance was constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Coleman*, 501 U.S. at 752-54. "Prejudice" requires a showing of "actual and substantial disadvantage, infecting [the petitioner's] entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982). One exception to the procedural default rule is for claims of ineffective assistance of counsel, which may be raised for the first time in a § 2255 petition regardless of whether or not the petitioner could have raised them on direct appeal. *Massaro*, 538 U.S. at 508-09.

The flip-side of the procedural default doctrine is the "mandate rule," which "bars re-litigation of issues already decided on direct appeal." *Yick Man Mui*, 614 F.3d at 53. "The mandate rule prevents re-litigation in the district court not only of matters expressly decided by

the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Id.*

### C. Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *See, e.g., Kimmelman v. Morrison*, 477 U.S. 365, 374-75 (1986). In *Strickland*, the Supreme Court held that in order to prevail on an ineffective assistance claim, a petitioner must establish that (1) "counsel's representation fell below an objective standard of reasonableness … under prevailing norms," and (2) the petitioner suffered prejudice as a result of defense counsel's deficient performance. 466 U.S. at 688, 692. Under the first prong, the court must "eliminate the distorting effects of hindsight," "evaluate the conduct from counsel's perspective at the time," and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In order to establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different." *Id.* at 694. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." *Dunham v. Travis*, 313 F.3d 724, 730 (citing *Strickland*, 466 U.S. at 694).

## III. DISCUSSION

### A. Sehgal's Ineffective Assistance Arguments

In support of her motion, Sehgal attests that she is an American citizen of Indian descent who immigrated to the United States in the early 1970s, and soon thereafter married her ex-husband, who is also of Indian pedigree. (Sehgal Aff. at ¶ 5). According to Sehgal, "[e]ven though [she] had graduated from medical school and was pursuing a career as a cardiologist, [she] retained many traditional Indian mores about the relationship between men and women,"

7

and was "submissive" to her ex-husband. (*Id.*). In the early 1990s, as she was experiencing difficulties in her marriage, she met Sunil, "an astrologer … advertised on television as someone who could serve as a spiritual adviser," and she "became transfixed by his apparent abilities to predict the future and his knowledge of [her] past life." (*Id.* at ¶ 7; Mem. at 4). Sehgal states that after she and her ex-husband divorced, she "increasingly began to depend on Sunil and [his wife] Rupal … for all of [her] emotional support." (Sehgal Aff. at ¶ 10). Sehgal asserts that Sunil and Rupal "began to take control of [her] finances" and "over [her] life," and that "[i]f [she] rebelled, which happened on several occasions, [she] was shouted at, manipulated, and on many occasions, beaten severely." (*Id.* at ¶¶ 11, 13). She purportedly "began to fear Sunil … to the point where [she] felt [she] could take no independent action without obtaining his permission." (*Id.* at ¶ 13). According to Sehgal, "[a]lmost all of the income [she] received went straight to the Jaitlys." (*Id.* at ¶ 14).

In her § 2255 motion, Sehgal raises non-specific arguments regarding Mr. Kushner's relative inexperience (*see* Mem. at 7, 9) and purported lack of preparation (*see id.* at 7, 9, 10, 18), and the generally disorganized state of affairs occasioned by the Blanch Firm's decision to terminate Kushner's employment shortly before her trial was to begin (*see id.* at 8-9). Sehgal's current general protests regarding Kushner's inexperience and lack of preparation are undermined by her October 2008 written requests that the Court require Kushner to continue representing her following his termination from the Blanch Firm because she was more comfortable with and confident in him than other attorneys at the Blanch Firm who claimed to be more experienced. Her general arguments regarding disorganization within the Blanch Firm following Kushner's termination were impliedly addressed and rejected by the Second Circuit in connection with her argument that this Court abused its discretion in denying her request for a

8

continuance of the jury selection date in order for her to locate new counsel, *see Sehgal*, 480 Fed. Appx. at 19, and thus cannot, on their own, form the basis of an ineffective assistance claim under the mandate rule. *See Yick Man Mui*, 614 F.3d at 53 (mandate rule bars re-litigation of claims "when the factual predicates of those claims, while not explicitly raised on direct appeal, were nonetheless impliedly rejected by the appellate court mandate"). In any event, Sehgal fails to link any of these general complaints with any specific deficiencies or negative consequences suffered as a result, and thus falls far short of establishing prejudice under *Strickland*.

More specifically, Sehgal now argues that Mr. Kushner failed to adequately investigate and uncover evidence regarding Sunil's purported physical and psychological abuse of Sehgal, and failed to adduce that evidence at trial through the cross examination of Rupal, direct examination of Sehgal's former administrative assistant, Florinda Dragazis, and perhaps by calling Sehgal herself to the stand. (*See* Sehgal Aff. at ¶¶ 28, 31, 32, 34, 35, 41; Mem. at 12-14, 19-21). Sehgal admits that the there was "no dispute that [she] had earned millions of dollars over the period of the alleged conspiracy," that it was "undisputed that the earnings were funneled into accounts and companies controlled by the Jaitlys," and that there was "no dispute that [she] had failed to pay taxes on those earnings." (Mem. at 18, 26). She argues that this conduct was the result of Sunil's physical and emotional domination over her, and that, had Mr. Kushner taken steps to uncover this information and present it to the jury, "the government could very well have failed to prove Ms. Sehgal's knowing participation in the conspiracy." (Mem. at 27).

Sehgal is not specific regarding when or even if she told Mr. Kushner about the physical abuse she purportedly suffered at the hands of Sunil. She asserts that she may have discussed the issue of physical abuse with Jeffrey Chabrowe and Kim Sommers, other attorneys with the

9

Blanch Firm at the time, after she learned that Mr. Kushner had been fired:

> Before November 3rd, I believe that I met with Mr. Chabrowe and Ms. Sommers one more time… We did talk about Rupal Jaitly, and that she was now cooperating against me. Mr. Chabrowe indicated that Rupal stated in a proffer session that she was beaten by Sunil Jaitly. I told Mr. Chabrowe that I too was beaten, but he did not follow up with me…

(Sehgal Aff. at ¶ 21). She also asserts that, during trial, Rupal testified about Sunil's physical abuse but Mr. Kushner failed to follow up:

> November 6th was a crucial day at the trial because Rupal Jaitly testified, who had been a co-defendant until shortly before the trial started. Ms. Jaitly testified about the relationship that the Jaitleys [sic] had with me, and the financial relationship that existed between us… Rupal Jaitly's testimony was also crucial because during redirect by the prosecution, Ms. Jaitly testified not only about the fact that both she and I were under the emotional influence of Sunil Jaitly, but also that she and I were under his *physical* influence. Specifically, Ms. Jaitly testified that Sunil used to beat her, and that she saw him beat me as well… The trial commenced [the next day] with further examination of Rupal Jaitly by Mr. Kushner. To my amazement, and in spite of my trying to pass him notes, he completely neglected to follow up on her prior day's testimony concerning Sunil Jailty's [sic] physical abuse of me. Even though a relationship where I was mentally, emotionally, and severely physically abused and manipulated by Sunil Jailtly [sic] may have explained my actions and inability to control my finances, Mr. Kushner failed to ask a single question that explored this area…

(*Id.* at ¶¶ 30, 31, 34) (emphasis in original).

### B. Kushner's Affirmation

In opposing Sehgal's § 2255 petition, the Government relies heavily upon Kushner's affirmation, which the Government contends "clearly refutes each and every allegation that Petitioner raised concerning the events and facts related to his representation of Petitioner before, during and even after trial." (Opp. at 3). As to the issue of physical and emotional abuse

inflicted by Sunil, Mr. Kushner attests as follows:

> [T]he allegation that I failed to understand that Petitioner was under the complete control of Sunil Jaitly is a disingenuous argument and misleading to this Court. Ms. Sehgal withheld from me the information that Sunil Jaitly was physically, psychologically, and emotionally controlling of her until after the trial had begun. After the trial began, Ms. Sehgal informed me of extraordinary violence that she suffered at the hands of Sunil Jaitly and a pattern of psychological control. This disclosure was actually limited in comparison to further disclosures that were made to me by Ms. Sehgal after the conviction in this case while she was housed at the Nassau County Jail. After disclosing this information to me, she explicitly forbid me from pursuing this line of defense because she was in perceived fear of Sunil Jaitly; she explicitly refused to testify about this information. I refer the Court to Document 158 [a post-conviction letter from Sehgal to the Court, dated October 23, 2009], pages 4, 8, and 9 for further support of this. For instance, Ms. Sehgal wrote in that document: "I was made to stay quiet by my co-defendant – Mr. Sunil Jaitly. Intimidation, enormous pressure to follow what he orders, no courage to go against him. I could not take the witness stand as he told me not to, told me not to take plea with felony and go to trial and I trusted him and I trusted god who knows all the truth and went for trial."

(Kushner Aff. ¶ 8).[1] As to the issue of the decision not to put Sehgal on the witness stand to testify about her relationship with Sunil, Mr. Kushner attests as follows:

> Petitioner's allegation that I spent little to no time discussing with her the all important decision of whether to testify on her own behalf is also untrue. The possibility of her testifying was always a topic of discussion between Ms. Sehgal and I. In fact, when it was disclosed to me that Sunil Jaitly was physically and emotionally abusive to Ms. Sehgal, I explicitly informed her that her best defense was to present this evidence through her direct testimony. As discussed above, she refused to testify to this issue and I was left with no authority and no ability to present this theory of defense. Ms. Sehgal knowingly and voluntarily waived her

---

1 Mr. Kushner's recitation of the contents of Sehgal's October 23, 2009 letter to the Court is accurate. The Court notes that, in the same letter, Sehgal also wrote: "I took risk of getting [Sunil] Jaitly angree [sic] [and] you might have heard he has bad temper. He was very abusive physically [and] mentally. I could never say this till I came to jail away from him [and] his family." (Cr. Dkt. 158 at 9).

> right to testify on her own behalf. She waived this right because
> she was afraid of Sunil Jaitly; nevertheless, she made this decision
> after extensive discussions with me and after carefully considering
> what she would and would not be willing to say on her own
> behalf…

(Kushner Aff. ¶ 11).[2]

### C. Sehgal's Motion is Denied without an Evidentiary Hearing

When presented with an ineffective assistance claim such as Sehgal's, "a court need not hold a full evidentiary hearing if the [petitioner's] assertion is unsupported by the trial record and flatly contradicted by a detailed affidavit from his trial lawyer. In such circumstances, there is sufficient evidence such that a court need not engage in the 'delay, the needless expenditure of judicial resources' and other burdens of a fruitless hearing." *Lang v. U.S.*, 02-cr-1444, 2009 WL 4788430, *2 (S.D.N.Y. Dec. 9, 2009) (citing and quoting *Chang v. U.S.*, 250 F.3d 79, 86 (2d Cir. 2001)). Sehgal does not assert that she ever informed Mr. Kushner about the physical and emotional abuse she purportedly sustained at the hands of Sunil prior to trial. On the other hand, Mr. Kushner affirmed under oath that Sehgal concealed this information from him prior to trial, and that when he finally learned about it during trial, Sehgal "explicitly forbid [him] from pursuing this line of defense because she was in perceived fear of Sunil Jaitly [and] she explicitly refused to testify about this information." (Kushner Aff. at ¶ 8). As discussed above, Mr. Kushner's version of events is supported by the contents of Sehgal's own October 23, 2009 letter to the Court in which she said, *inter alia*, "I was made to stay quiet by my co-defendant – Mr. Sunil Jaitly … I could not take the witness stand as he told me not to…" (Dkt. 158 at 4).

To the extent that Sehgal argues that Kushner's failure to uncover the alleged physical /

---

[2] The Court's decision is not based upon any of the documents that Mr. Kushner sent to the Court for in camera inspection, so there is no need to discuss their contents.

emotional abuse prior to trial in the face of her own silence on the issue constitutes ineffective assistance, this argument fails. "Although defense attorneys have a 'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary[,]' 'when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.' " *Beras v. U.S.*, 05-cv-2678, 2013 WL 1155415, *21 (S.D.N.Y. March 20, 2013) (quoting *Strickland*, 466 U.S. at 691 and *Ryan v. Rivera*, 21 Fed. Appx. 33, 35 (2d Cir. 2001)). Sehgal points to no authority suggesting that a defense attorney's duty to conduct a "reasonable investigation" before trial includes delving into into conjectural issues such as physical abuse by a co-defendant who had long ago fled to India where the client (an ostensibly educated and competent client in this instance) has not said anything that would reasonably prompt such an inquiry. Moreover, it is evident from Kushner's affidavit and Sehgal's own submission to the Court that even if Kushner had investigated and discovered the purported physical and emotional abuse before trial, that investigation would have been fruitless because Sehgal would not have authorized him to present evidence of the abuse as a defense.

Finally, in reply to the Government's opposition and Kushner's affidavit, Seghal's current attorney, Florian Miedel, argues that "[t]he primary problem with Mr. Kushner's representation was that he spent too little time with Ms. Sehgal, and therefore failed to recognize what would have been obvious to anyone who devoted real time and attention to his client – namely that she suffers from *some kind* of mental affliction that caused her to succumb to a scheme in which she was the primary victim." (Reply at 2) (emphasis added). In support of the argument that Sehgal had *some kind* of mental affliction that Kushner failed to discover, which was not raised in the moving papers, Sehgal cites *Harries v. Bell*, 417 F.3d 631 (6th Cir.

13

2005) and *Douglas v. Woodford*, 316 F.3d 1079 (9th Cir. 2003). Both of those cases involve petitions to vacate death sentences following capital murder convictions where, prior to sentencing, trial counsel failed to unearth mitigating evidence of the defendants' traumatic childhoods, brain injuries, and mental health issues despite being put on notice that such evidence was ample and easily obtainable. *See Harries*, 417 F.3d at 637-40; *Douglas*, 316 F.3d at 1085-91. In great contrast, Mr. Miedel fails to even name what kind of "mental affliction" Sehgal (a successful physician prior to her conviction) purportedly suffers from, let alone point to any information that might have put Kushner on notice that Sehgal suffered from this unidentified mental affliction or otherwise triggered a duty to investigate her mental health further.

In sum, it is clear from the record that Sehgal's ineffective assistance arguments are without merit.

## IV. CONCLUSION

For the reasons set forth above, Sehgal's motion to vacate, set aside, or correct her sentence of imprisonment pursuant to 28 U.S.C. § 2255 is denied. Given that it is clear from the record that Sehgal is not entitled to § 2255 relief, the Court will not hold an evidentiary hearing on her motion. The Court declines to issue a certificate of appealability because Sehgal has not "made a substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

*s/ Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge

Dated: August 19, 2016
      Central Islip, New York